FILED: July 16, 2009



IN THE SUPREME COURT OF THE STATE OF OREGON

FRIENDS OF THE COLUMBIA GORGE, INC.,
COLLYN BALDWIN, CLAUDIA CURRAN,
ERIC LICHTENTHALER, PHIL PIZANELLI, DIXIE STEVENS,
KIMBERLEE THORSELL, PETER THORSELL,
BRIAN WINTER and CYNTHIA WINTER, 

Petitioners
on Review, 

and 



BEVERLY KLOCK
and CLAIR KLOCK, 

Petitioners,


v. 



COLUMBIA RIVER GORGE COMMISSION, 

Respondent
on Review. 



(CRGC
No. PA-05-02; CA A131299; SC S055916)



En Banc



On review from the
Court of Appeals.*



Argued and submitted 
October 29, 2008.



Gary K. Kahn, of
Reeves, Kahn & Hennessy, Portland, argued the cause and filed the brief for
petitioners on review.



Jeffrey B. Litwak,
White Salmon, Washington, argued the cause and filed the brief for respondent
on review.



GILLETTE, J.



The decision of the
Court of Appeals and the order of the Columbia River Gorge Commission are
affirmed.





*Judicial review of
final order of the Columbia River Gorge Commission. 218 Or App 232, 179
P3d 706 (2008).

GILLETTE,
J.

This administrative law case is one
of three filed by the Friends of the Columbia Gorge and others (Friends),
challenging various actions by the Columbia River Gorge Commission (the commission)
under the Columbia River Gorge National Scenic Area Act (the Act) and the Columbia
River Gorge Scenic Area Management Plan (management plan).  In this case,
Friends challenges certain aspects of a 2005 amendment to the management plan,
asserting that they are inconsistent with the Act.  On review, the Court of
Appeals concluded that the amendment to the management plan did not violate the
Act in any of the respects asserted by Friends.  Friends of Columbia Gorge
v. Columbia River (A131299), 218 Or App 232, 179 P3d 706 (2008).  In this
court, Friends contends that the Court of Appeals applied the wrong legal
standards to its review of the commission's actions and asks this court to
reverse and remand the Court of Appeals decision for reconsideration under the
correct standards.  We allowed review and now affirm the decision of the Court
of Appeals.  

To understand the issues in this
case, a brief summary of the legal background is necessary.(1)
 In 1986, Congress passed the Columbia River Gorge National Scenic Act, 16 USC
§§ 544-544p, which created the Columbia River Gorge National Scenic Area in
Oregon and Washington.  The purpose of the Act was to protect the scenic,
cultural, recreational, and natural resources of the Columbia River Gorge, and
to protect and support the economy of the area by encouraging growth in
existing urban areas and by allowing future economic development while
protecting the area's resources.  16 USC § 544a.  

The Act authorized Oregon and
Washington to enter into an interstate compact and to create a regional agency,
the Columbia River Gorge Commission.  The commission, in cooperation and
consultation with the United States Secretary of Agriculture, would be charged
with developing and implementing a land use management plan for the "scenic
area," which includes approximately 292,000 acres of land along both sides
of the Columbia River.(2)
 The Act divided the scenic area into three kinds of subareas:  urban areas,
which are not subject to scenic area regulations or the management plan, 16 USC
544b(e); "special management areas" (SMAs), which comprise the more
than 100,000 acres of land within the scenic area that are deemed the most
sensitive, 16 USC 544b(b); and the areas in which the remaining land in the
scenic area is located, which are referred to as "general management
areas" (GMAs).(3) 
It also established a framework within which the management plan was to be
developed, implemented and administered.  Among other things, that framework directed
the commission to carry out studies and inventories of the features, uses, and
resources of the land within the scenic area and required the commission to use
the resulting studies and inventories to designate areas within the scenic area
that are suitable for various specific uses.  16 USC § 544d.  

As authorized by the Act, Oregon and
Washington established the Columbia River Gorge Commission, and, in 1991, the commission
adopted a management plan for the Columbia River Gorge.  The Act requires the commission
to undertake a comprehensive review of the management plan at least every ten
years and authorizes the commission to make any necessary revisions, subject to
the review and concurrence of the Secretary of Agriculture.  16 USC § 544d(g). 
In accordance with that requirement, over the next few years, the commission
reviewed whether and in what ways the management plan should be revised, and,
in 2004, the commission adopted certain revisions to the plan.  

The Act also permits the commission
to amend the management plan "at any time that conditions within the
scenic area have significantly changed."  16 USC § 544d(h).  The commission
adopted rules governing the amendment process, which are published in Oregon at
OAR chapter 350 division 50.(4) 
The rules set out procedures for citizens to initiate the amendment process,
either by requesting the commission to initiate a legislative amendment to the management
plan or by filing an application for a quasi-judicial amendment to the plan. 
OAR 350-050-0040.   The only substantive criteria for the commission's approval
of an amendment application are set out in OAR 350-050-0030:  


"The Commission must find the following criteria are
satisfied before it approves an amendment to the Management Plan:

"(1) Conditions in the Scenic Area have significantly
changed.  This means:

"* * * * * 

"(b) new information or inventory data
regarding land uses or resources that could result in a change of a plan
designation, classification, or other plan provision;

"* * * * * 

"(2) The proposed amendment is consistent with the
purposes and standards of the Scenic Area Act; and

"(3) No practicable alternative to the proposed
amendment more consistent with the purposes and standards of the Scenic Area Act
exists."


Under that authority, the commission
has amended the management plan a number of times.  As pertinent here, in 2005,
the owner of the View Point Inn, a building in Multnomah County that is listed
on the National Register of Historic Places, submitted an application to the commission
to amend the management plan to permit him to use the property for a commercial
purpose consistent with its historic use as an inn and a restaurant.  The
application proposed an amendment to the management plan that would have
allowed historic properties in the scenic area that were listed on the National
Register before November 17, 1986, to be used for restaurant or hotel purposes
if that is how the property had been used historically.  The application also
stated that the purpose of the proposal was to allow the View Point Inn to
generate sufficient income to support its restoration.  

In the course of considering that
application, the commission began to question how well the management plan
protected historic buildings in the scenic area.  Ultimately, the commission
decided to consider expanding the scope of the proposed amendment to address
the protection of such buildings more generally.(5)
 It directed its staff to commission an inventory of all historic buildings in
the scenic area; to evaluate the uses that were then allowed in those buildings,
as well as those that could be allowed to improve protection of those buildings;
to conduct a survey of how other jurisdictions encourage preservation of
historic buildings; and to assess whether possible new uses of historic
buildings would be consistent with the purposes and standards of the Act.(6) 
With that information in hand, the commission voted to table the View Point Inn
application for the time being and determined, instead, to devise a broader
plan amendment dealing with all historic buildings in the scenic area.   

The commission eventually proposed
substantive modifications to the applicant's proposed plan amendment, set a
hearing date, and gave the public notice and an opportunity to comment on the proposed
modification.  At the conclusion of that process, the commission issued a final
order finding the three criteria required to support a plan amendment under OAR
350-050-0030 and adopting Plan Amendment (PA) 05-02, which is the subject of
this proceeding.  With respect to amendment prerequisites set out in OAR 350-050-0030,
the commission found, first, that conditions in the scenic area had changed
significantly.  OAR 350-050-0030(1)(b).  Specifically, the commission found
that new information and inventory data regarding historic buildings obtained
through the review process showed that certain cultural resources -- historic
buildings -- were not being well protected under the management plan and, in
fact, were deteriorating.  The commission also found that the management plan had
not adequately anticipated the difficulty of maintaining historic buildings
over the long term as a cultural resource in the scenic area.(7)

Second, the commission found that there
was no practicable alternative to its proposed amendment that would be more
consistent with the Act.  OAR 350-050-0030(3).  In that regard, the commission
first discussed the parameters of that criterion.  The commission stated that
consideration of whether there is a practicable alternative begins with the initial
proposed plan amendment -- to be an "alternative" to that proposal,
other suggested options have to satisfy at least the same purpose as the
initial proposal, and to be "practicable," the options must be things
that can be done, considering technology and cost.  See Management Plan,
Glossary (so defining the word "practicable").(8)

In this case, the purpose of the
initial View Point Inn proposed plan amendment was to allow an adaptive reuse
of that property in a manner likely to generate enough revenue to support the
restoration of the structure.  The commission found that its own modification
to the initial proposed plan amendment, PA 05-02, was a practicable alternative
to that initial, limited proposal because it was consistent with the purposes of
that proposal.  The commission also found that PA 05-02 was more consistent
with the Act because it provided protection and enhancement of cultural
resources not covered by the initial View Point Inn proposal and contained
criteria designed to ensure that permissible uses of historic properties did
not adversely affect other resources in the scenic area.

Finally, the commission considered
and rejected several other proposed modifications to the View Point Inn plan
amendment, including "an alternative" (which the commission summarized
by listing nine key elements) that Friends had suggested, on the ground that
they were not practicable alternatives to the initial proposed plan amendment
or that they were not more consistent with the purposes and standards of the
Act than the commission's own proposed modification.  In the end, the commission
found 


"that there is no practicable alternative to [PA 05-02]
that is more consistent with the purpose and standards of the Act.  [PA 05-02]
provides the most comprehensive protection to historic resources of any
alternatives considered, while also being consistent with the purpose of the
Applicant's Proposed Plan Amendment.  For these reasons, the Commission
concludes that [PA 05-02] satisfies the requirements of [OAR 350-050-0030(3)]."


Third, the commission found that PA
05-02 was consistent with the purposes and standards of the Act, OAR 350-050-0030(2),
insofar as it allows historic buildings to be used in a manner that protects
their historic integrity and facilitates public appreciation of those buildings
as significant cultural resources.  At the same time, by requiring that the new
uses of historic buildings meet new and existing guidelines protecting other
scenic, cultural, natural, and recreational resources in the scenic area, PA
05-02 ensures that the additional uses of the historic buildings permitted in
the plan amendment do not adversely affect those other resources.  Finally, the
commission found that, by allowing limited commercial uses of historic
buildings, PA 05-02 also was consistent with the second purpose of the Act, to
protect and support the economy of the area.

Having made those findings, the commission
approved PA 05-02, which added provisions to the management plan permitting
certain new commercial uses of historic buildings in the GMA.  First, PA 05-02 added
the following policy statement to the chapter in the management plan dealing
with cultural resources:


"20.  Provide incentives to protect and enhance
historically significant buildings by allowing uses of such buildings that are
compatible with their historic character and that provide public appreciation
and enjoyment of them as cultural resources."  


Part I, ch 2 (Cultural Resources), GMA Provisions, GMA
Policies 20.  In addition, it added a new section to the management plan that,
among other things, expressly permits the following commercial uses of historic
buildings:  


"GMA Guidelines

"Additional Review Uses for Historic Buildings

"1.  Properties in all GMA land use designations except
Open Space and Agriculture-Special with buildings included on the National
Register of Historic Places shall be permitted to be open to the public for viewing,
interpretive displays, and an associated gift shop * * *, subject to compliance
with the applicable guidelines to protect scenic, cultural, natural and
recreation resources [and other protective guidelines].

"2.  Properties in all GMA land use designations except
Open Space and Agriculture-Special with buildings included on the National
Register of Historic Places, and which were former restaurants and/or inns
shall be permitted to re-establish these former uses, subject to compliance
with the applicable guidelines to protect scenic, cultural, natural and
recreation resources [and other protective guidelines] * * *.(9)

"3.  Properties in all GMA land use designations except
Open Space and Agriculture-Special with buildings included on the National
Register of Historic Places shall be permitted to hold commercial events, subject
to compliance with the applicable guidelines to protect scenic, cultural,
natural and recreation resources [and other protective guidelines].

"4.  The following additional review uses may be
allowed in all GMA land use designations except Open Space and
Agriculture-Special on a property with a building either on or eligible for the
National Register [of] Historic Places and that was 50 years old or older as of
January 1, 2006, subject to compliance with the applicable guidelines to
protect scenic, cultural, natural and recreation resources * * * [listing ten
types of commercial activities(10)]."


Management Plan, Part II, ch 7 (General Policies and
Guidelines), Special Uses in Historic Buildings, GMA Guidelines, Additional Review
Uses for Historic Buildings.

Friends sought judicial review in the
Court of Appeals of the commission's final order adopting PA 05-02.  In that
court, Friends interposed three objections to the adoption of the plan
amendment:  (1) that conditions in the scenic area had not changed
significantly enough to warrant amendment of the management plan under OAR
350-050-0030; (2) that the commission improperly rejected or failed to consider
all practicable alternatives to PA 05-02 before adopting that amendment; and
(3) that the plan amendment is not consistent with the purposes and standards
of the Act.  The Court of Appeals rejected all three arguments.  

Before this court, Friends has
abandoned its first argument, viz., that the commission did not have
authority to adopt PA 05-02 because conditions in the scenic area had not
changed significantly enough to justify amending the management plan.  Friends now
limits its focus to its second and third arguments.  Specifically, Friends argues
that, because the commission did not discuss certain of Friends' proposed
alternatives to PA 05-02 in its final order adopting PA 05-02, it failed to
carry out its duty under OAR 350-050-0030(3) to determine that "[n]o practicable
alternative to the proposed amendment more consistent with the purposes and
standards of the Scenic Area Act exists."  Friends also contends that the commission
failed to carry out its duty under OAR 350-050-0030(2) to ensure that "[t]he
proposed amendment is consistent with the purposes and standards of the Scenic
Area Act," insofar as PA 05-02 permits certain commercial uses of
resources in areas zoned for agricultural, forest, public recreation, and
residential uses notwithstanding what Friends contends is the Act's mandate to
allow large scale commercial uses only in urban areas and other areas zoned for
such uses and notwithstanding the Act's requirement to protect and enhance
agricultural and forest land for agricultural and forest uses.  

Before we address Friends' substantive
challenges to the commission's final order, we first consider two preliminary objections
that Friends raises to the standards of review that the Court of Appeals used
in evaluating its claims.  Friends contends that the Court of Appeals erred in holding
that, to succeed on a claim that PA 05-02 violates the Act, Friends must
demonstrate that the plan cannot be applied consistently with the Act under any
circumstance.  Friends asserts that that standard is unduly restrictive.  Rather,
Friends asserts, it need only show that the challenged policies and guidelines
depart from or contravene a legal standard expressed or implied in the Act.  Friends
also argues that the Court of Appeals further erred in holding that, when commission
actions are reviewed in Oregon courts, the deferential standard of review set
out in Chevron USA, Inc. v. Natural Res. Def. Council, 467 US 837, 104 S
Ct 2778, 81 L Ed 2d 694 (1984), applies.  Under that standard of review, when a
federal agency has been charged by Congress with implementing a federal
statute, courts are to defer to that agency's interpretation of the statute,
treating it as controlling, as long as it is reasonable.  On that point,
Friends argues that, because the commission is not, strictly speaking, a federal
agency charge by Congress with implementing a federal law, this
court should apply Oregon's statutory construction methods to the commission's
interpretations of the Act. 

This court considered both those
contentions in Friends of Columbia Gorge v. Columbia River (S055722), 346
Or __, __ P3d __ (2009) (Friends (S055722)) (decided this date).  With
respect to the first, we agreed with Friends and held that the stringent
standard of review that the Court of Appeals used is not appropriate to the
issues on review.  We will not repeat that lengthy discussion here.  It is
sufficient for the purposes of this case to state that the management plan,
both in its original and its revised (and, in this case, amended) form, is much
like a "rule" as that term is defined in the Oregon APA:  "any
agency directive, standard, regulation or statement of general applicability
that interprets or prescribes law or policy, or describes the procedure or
practice requirements of any agency." ORS 183.310(9).  Friends (S055722),
346 Or at ___ (slip op at 10).  Moreover, we observed, the plan was adopted and
revised by the commission through a process that is similar to the rulemaking
process prescribed in the Oregon APA at ORS 183.335.  Id.  We concluded
that, although the commission is not a state agency that is directly subject to
the Oregon APA, Friends' challenges to the management plan (and its revisions
and amendments) nevertheless are analogous to typical "facial"
challenges to the validity of a rule under the Oregon APA.  Therefore, in
reviewing the commission's action under ORS 196.115(c) to (e), the court must
consider the legal standard that a court would use in judicial review of a rule
under the APA:  whether the commission "departed from a legal standard
expressed or implied in the particular law being administered, or contravened
some other applicable statute."  Id. at ___ (slip op at 11), quoting
Planned Parenthood Assn. v. Dept. of Human Res., 297 Or 562, 565, 687
P2d 785 (1984).  That standard, we held, was the appropriate one to apply to
Friends' facial challenge to the lawfulness of the management plan, rather than
the "under any circumstances" test applied by the Court of Appeals, and
the Court of Appeals therefore erred in that regard.  Id.  We take the
same view here.

With respect to Friends' argument
concerning the applicability of the deferential standard of review set out in Chevron,
we agreed with the Court of Appeals that, in evaluating the commission's
interpretation of the Act, it is appropriate to apply that standard.  Id.
at ___ (slip op at 20-21).  We see no reason to repeat that discussion here,
particularly because nothing in our review in this case implicates or requires Chevron
deference.

We turn to Friends' substantive
challenges to the commission's final order.  As noted, Friends' objections are
two-fold.  Friends contends, first, that the Court of Appeals erred in
concluding that the commission met its obligation under OAR 350-050-0030(3) to
ensure that there is no practicable alternative to PA 05-02 more consistent
with the Act.  Second, Friends asserts that, to the extent that PA 05-02 allows
new commercial uses and development in areas not zoned for such uses, it is
inconsistent with the Act and the Court of Appeals erred in concluding to the
contrary.  As we shall explain, both of Friends' arguments rest on faulty
assumptions.  

Under OAR 350-050-0030, "[t]he
Commission must find the following criteria are satisfied before it approves an
amendment to the Management Plan:  * * * (3) [n]o practicable alternative to
the proposed amendment more consistent with the purposes and standards of the
Scenic Area Act exists."  As Friends reads the foregoing, it requires the commission
to "show" that no practicable alternative exists, through "some
evaluation of specific alternatives presented to [it]."  (Emphasis in
original.)  Friends concludes that, because the final order does not set out an
explanation of certain practicable and reasonable alternatives (in Friends'
view) that Friends had proposed, and the reasons for the commission's rejection
of them, the commission necessarily must have failed entirely to evaluate those
alternatives.(11) 
And, according to Friends, that failure violated the commission's mandate under
OAR 35-050-0030(3) and, consequently, the final order was "inconsistent
with an agency rule, an officially stated agency position or a prior agency
practice."  ORS 196.115(3)(d)(B).  Also implicit in Friends' argument is the
assumption that certain of its proposed alternatives that the commission failed
to consider were "more consistent with the purposes and standards of"
the Act.  

The commission responds that it
considered the alternatives that Friends submitted as a "package," that
nothing in the rule precludes it from considering them in that manner, and that
it gave due consideration to all parts of that package, even if it did not refer
specifically to some of the parts on its list of the package's "key
elements" in its final order.  And, having done so, the commission claims
that it correctly concluded that Friends' proposed alternatives were no more consistent
with the purposes and standards of the Act than PA 05-02, insofar as the text
of PA 05-02 permits certain new commercial uses of historic properties
"subject to compliance with the applicable guidelines to protect scenic,
cultural, natural, and recreation resources."  Management Plan, Part II,
ch 7 (General Policies and Guidelines), Special Uses in Historic Buildings, GMA
Guidelines, Additional Review Uses for Historic Buildings.  In other words, the
commission concluded that none of Friends' suggested alternatives ultimately would
better serve the Act's dual purposes of protecting resources while at the same
time protecting and supporting the economy of the area by allowing a measure of
economic activity.  

As the commission's response accurately
suggests, the premise of Friends' argument is fallacious:  the fact that the commission
did not describe in the final order all the details of Friends' proposed
alternative does not, without more, mean that the commission did not evaluate
those details.  As Friends itself points out and as the record reflects,
Friends submitted a multi-part alternative proposal, along with a complete
explanation of the impact of the various permutations, to each commissioner
during the plan amendment comment period.  The commission's final order states
that the commission considered Friends' proposed alternative.  It is fair to take
the commission at its word that it gave due consideration to all parts of Friends'
proposal, and Friends has not identified any reason not to do so.

Moreover, to the extent that Friends
can be understood to be arguing that the commission is required by its own
rules or some other source of law to evaluate each and every aspect of Friends'
suggested alternatives in the final order, that argument also fails.  First,
contrary to Friends' argument, the rule itself does not require the commission
to "show" that no practicable alternative exists through an "evaluation"
of specific alternatives, presumably in the final order.  OAR 350-050-0030
merely provides that the commission "must find" that no practicable
alternative to the proposed amendment more consistent with the Act exists.(12) 
In its final order, the commission did so find.  In addition, although this
court often has held that an administrative order must include findings that
are adequate for meaningful judicial review, see, e.g., Doherty
v. Oregon Water Resources Director, 308 Or 543, 547, 783 P2d 519 (1989) (so
stating); Diack v. City of Portland, 306 Or 287, 301, 759 P2d 1070
(1988) (same), we conclude that the commission's final order meets that
standard here.  The order listed what the commission believed to be the most
relevant components of Friends' alternative, summarized the key points, and
explained why Friends' alternative was not practicable and why it would provide
less protection for historic buildings than PA 05-02.  For all those reasons,
we conclude, as did the Court of Appeals, that the commission met its
obligation under OAR 350-050-0030(3) to ensure that there is no practicable
alternative to PA 05-02 more consistent with the purposes and standards of the Act. 


Finally, Friends argues that the
Court of Appeals erred in concluding that PA 05-02 is "consistent with the
purposes and standards of the Scenic Area Act."  OAR 350-050-0030(2).  According
to Friends, the Act "allow[s] large-scale commercial uses and development
only in urban areas and areas zoned for such uses," yet PA 05-02 permits
numerous types of new commercial uses and development, including restaurants,
bars, hotels, and wineries, in nearly the entire GMA, including on land zoned
for agricultural, forest, recreational, and residential purposes, "without
the suitability analysis required by the Act."  Moreover, Friends argues,
the commission did not zone particular areas for the commercial use of historic
buildings, as Friends contends the Act requires, nor did the commission limit
the scope of the plan amendment to areas already zoned for commercial uses.  Finally,
Friends contends that allowing commercial uses of historic properties
throughout the GMA undermines the second purpose of the Act, which is to
encourage commercial activity to occur in existing urban areas.  

The problem with those arguments, as
the Court of Appeals correctly observed, is that the Act does not contain the
restrictions on commercial uses for which Friends contends.  Friends points to
16 USC § 544d(b)(5) as authority for its position that the Act requires the commission
to confine commercial uses and development outside of urban areas within
specific areas designated as commercial zones.  Section 544d of the Act
generally describes what must be included in the management plan.  Subsection
(b) of that section provides:  


"Within two years after the Commission is
established, it shall develop land use designations for the use of non-Federal
lands within the scenic area.  The land use designations shall 

"* * * * * 

"(5) designate lands in the scenic area
outside the special management area used or suitable for commercial
development:  Provided, That such designation shall encourage, but not require,
commercial development to take place in urban areas and shall take into account
the physical characteristics of the areas in question and their geographic
proximity to transportation, commercial, and industrial facilities and other
amenities."


16 USC § 544d(b)(5).  As the commission points out, the
foregoing requirement to designate areas for commercial development is simply a
directive that the management plan include land use designations that permit
commercial development in the scenic area, which the commission fulfilled by
creating Commercial, Commercial Recreational, and Rural Center land use
designations.  In addition, the requirement to take various geographic and
physical factors into account applies only to the commission's creation of land
designations.  The requirement does not, as Friends argues, "require"
a "suitability analysis" before the commission may permit any commercial
use in the scenic area.  Indeed, another part of the same section, 16
USC § 544d(d)(7), requires the management plan to include a provision to
"require that commercial development outside urban areas take place
without adversely affecting the scenic, cultural, recreation, or natural
resources of the scenic area."  (Emphasis added.)  In express compliance
with that requirement, PA 05-02 permits various commercial uses of historic
buildings "subject to compliance with the applicable guidelines to protect
scenic, cultural, natural and recreation resources and [other historic building
and cultural resource protection guidelines] and all Scenic, Recreation,
Agriculture and Forest Lands Guidelines."  In short, we conclude that 16
USC § 544d(b)(5) does not in any way speak to the commission's authority to
permit commercial activities in other parts of the scenic area.(13)

We also fail to see how permitting
certain new commercial uses of historic properties in the scenic area "undermines"
the Act's stated purpose of "encouraging growth to occur in existing urban
areas."  16 USC § 544a(2).  Friends' contends that owners of historic
buildings engaging in commercial uses of those properties will compete with
businesses in urban areas, to the detriment of the urban businesses.  That
argument is completely inapposite.  Even if the amendment can be viewed as
encouraging commercial use of historic properties outside of existing
urban areas, that result is not inherently inconsistent with the Act's second
purpose to encourage commercial development in urban
areas.  And it certainly does not violate any provision of the Act.  It follows
that the Court of Appeals correctly concluded that Friends failed to identify
how the plan amendment permits anything that the Act prohibits.  

The decision of the Court of Appeals and
the order of the Columbia River Gorge Commission are affirmed.




1. Additional
details concerning the statutory, regulatory, and procedural background of the
commission's actions are provided in the two related cases between the same
parties that this court decides today, Friends of Columbia Gorge v. Columbia
River (S055722), 346 Or __, __ P3d __ (2009) (Friends (S055722));
and Friends of Columbia Gorge v. Columbia River (S055915), 346 Or __, __
P3d __ (2009).  

Return to previous location.



2. The
scenic area includes land in Multnomah, Hood River, and Wasco counties in
Oregon, and Clark, Skamania, and Klickitat counties in Washington.

Return to previous location.



3. The
phrase "general management area" is not defined in the Act, but the
commission uses that phrase throughout the management plan to refer to the
remaining land in the scenic area.  In addition, the statute that the Oregon
legislature enacted to implement the Act, ORS chapter 196, defines the phrase
to mean "the area within the scenic area that is not an urban area or
special management area."  ORS 196.105(2).  

Return to previous location.



4. The
commission's rules also are on file at the commission's office and can be found
on its web site, at http://www.gorgecommission.org/otherrules.cfm.  The
commission amended its plan amendment rules in 2006, after its adoption of the
plan amendment at issue in this case, to, among other things, change the order
of the second and third amendment criteria in OAR 350-050-0030, and in other
ways that do not change our analysis of this case.  Accordingly, we refer to
pertinent rules using their current OAR citations. 

Return to previous location.



5. As
a practical matter, the only property in the scenic area that would have
qualified under the applicant's proposal to engage in the specified commercial
uses was the View Point Inn, because that was the only property on the National
Register for Historic Places prior to November 17, 1986, that originally was
used for restaurant and hotel purposes.  

Return to previous location.



6. The
survey revealed that there were four properties in the scenic area that were
listed on the National Register of Historic Places, all of which were located
in Multnomah County.  In addition, 18 properties in the scenic area previously
had been determined to be eligible for listing under the criteria set out in 36
CFR § 60.4 for listing in the National Register, and 36 others were deemed to
be potentially eligible for listing.  

Return to previous location.



7. In
the final order, the commission noted that the survey that it had commissioned
revealed that, since the adoption of the management plan, many historic
buildings, including some significant ones, had already been lost through
demolition or incompatible alterations, and others were threatened by disuse or
poor maintenance.  In addition, the consultants who conducted the survey
interviewed the owners of properties either on or eligible for listing on the
National Register, and observed that virtually all of them were concerned about
the high cost of restoring, rehabilitating, and maintaining historical
buildings in a manner that would preserve their historic integrity. 

Return to previous location.



8. In
this opinion, when we refer to the "management plan," we are not
referring to a particular paper document, but to the entire body of law that
comprises the management plan, including revisions and amendments that
currently are in effect.  An up-to-date version of the management plan is
available online at http://www.gorgecommission.org.  When we cite
provisions in the management plan in this opinion, we make an effort to give
sufficient information to permit the reader to find the provisions we discuss,
but we do not attempt to refer to a particular document, online or on paper, or
to any page numbers therein.  

Return to previous location.



9. This
second category would permit the use requested in the original View Point Inn
application.  

Return to previous location.



10. The
permissible commercial activities include, among other things, drinking
establishments, outdoor and indoor commercial events, wineries, artist studios
and galleries, conference and retreat facilities, and parking lots.  

Return to previous location.



11. The
Court of Appeals understood Friends to be arguing that, because the commission is
required to conclude that "no practicable alternative exists," it
must consider and reject "each and every conceivable alternative."  The
court rejected that argument, concluding that that requirement means only that
the commission must exercise some measure of discretion and act reasonably in
the circumstances.  Friends, 218 Or App at 249.  Friends does not
challenge that interpretation here.  Rather, Friends contends only "that
the commission must evaluate specific alternatives presented to it," but
did not do so in this case.  

Return to previous location.



12. Friends
does not engage in any kind of interpretive analysis of the words "must
find" in OAR 350-050-0030 to show that those words mean that the
commission must make specific findings in its order individually rejecting each
alternative that was presented to it.  

Return to previous location.



13. Friends
also seems to argue that PA 05-02 conflicts with certain provisions in the
management plan as it was originally adopted in 1991, limiting commercial
activities to areas designated for such activities.  That argument, however, is
a non sequitur, insofar as any amendment to the management plan, by its
very nature, likely will be inconsistent with the original terms of the
management plan.  

Return to previous location.